UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GRENWAY CAPITAL CORPORATION, an Ohio corporation,<br><br>                    Plaintiffs,<br><br>          – against –<br><br>TRUECHOICE SOLUTIONS, INC., a Delaware corporation,<br><br>                    Defendant. | Civil Case No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Grenway Capital Corporation ("GCC" or "Plaintiff") alleges upon information and belief, except as otherwise particularly stated, as follows:

## OVERVIEW

This is a straightforward action for breach of two promissory notes. GCC loaned Defendant TrueChoice Solutions, Inc. ("TrueChoice" or "Defendant") $50,000.00 at 8% annual interest in November 2014 and another $50,000.00 at 12% annual interest in July 2016. TrueChoice executed promissory notes memorializing the terms of both loans and its repayment obligations to GCC. To date, TrueChoice has not paid GCC a single cent of the principal or interest it owes on the two notes. As of September 30, 2020, TrueChoice owed GCC $100,000.00 in principal and $96,957.66 in past due interest on the two notes. Interest has continued to accrue with each passing day since then and will continue to accrue until TrueChoice pays GCC the amounts it owes on the notes. GCC seeks a judgment against TrueChoice in the amount of the outstanding principal and interest on the notes, post-judgment interest at the rates specified in the notes, and costs of suit.

## PARTIES

1.      Plaintiff Grenway Capital Corporation is a consulting and venture capital firm, registered as an Ohio corporation, with its principal place of business and headquarters in Moreland Hills, Ohio.

2.     Defendant TrueChoice Solutions, Inc. is a Delaware corporation with its principal place of business located at 150 East 52nd Street, New York, New York 10022. According to its website, TrueChoice is "the leader in real-time preference measurement." The company purports to offer a suite of patented econometric technologies and algorithms that allow businesses to precisely quantify the preference structures of customers and employees in real time, significantly improving the customer experience, boosting sales lead generation, and measurably increasing the profitability of every transaction.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action because the amount in controversy exceeds $75,000, and complete diversity of citizenship exists among the parties. 28 U.S.C. § 1332(a)(1)-(4).

4.     Venue lies in this District because TrueChoice is headquartered and has its principal place of business in this District; because a substantial part of the events giving rise to this action occurred in this District; because property that is the subject of this action is situated in this District; and because TrueChoice is subject to the personal jurisdiction of this Court with respect to this action. 28 U.S.C. § 1391(b)(1)-(3).

## FACTUAL BACKGROUND

5.     In November 2014, GCC agreed to loan TrueChoice $50,000.00 at 8% annual interest, with the loan principal and all accrued interest due on or before February 18, 2015.

6.     On November 7, 2014, GCC, by and through its sole shareholder and principal, Marc R. Leizman, funded the loan by delivering a $50,000.00 check to TrueChoice.

7.     On November 21, 2014, TrueChoice delivered to Leizman an executed convertible promissory note acknowledging and confirming the specific terms of the loan and TrueChoice's repayment obligations to GCC. A true and correct copy of the 2014 Note is attached hereto as Exhibit A and incorporated by reference as if set forth at length herein.

8.     In July 2016, GCC agreed to loan TrueChoice another $50,000.00, this time at 12% annual interest, with the loan principal and all accrued interest due on or before October 5, 2016.

9.     On July 6, 2016, TrueChoice executed a convertible promissory note acknowledging and confirming the specific terms of the loan and TrueChoice's repayment obligations to GCC (the "2016 Note"). A true and correct copy of the 2016 Note is attached hereto as Exhibit B and incorporated by reference as if set forth at length herein.

10.     That same day, GCC funded the loan by wiring TrueChoice $50,000.00.

11.     On July 18, 2016, TrueChoice delivered the 2016 Note in its executed form to Leizman.

12.     To date, GCC has not received any payment from TrueChoice or any third parties on account of either the 2014 Note or the 2016 Note.

12.     TrueChoice is indebted to GCC for the principal balances on the 2014 Note and the 2016 Note and all interest accrued thereon. As of September 30, 2020, TrueChoice owed GCC $196,957.66 in combined principal and interest on the two notes. Because interest continues to accrue on the notes, TrueChoice's indebtedness has grown since that date and will continue to grow until TrueChoice satisfies its obligations to GCC.

## PLAINTIFF'S CLAIMS FOR RELIEF AGAINST DEFENDANT

### BREACH OF CONTRACT

#### (2014 Note)

13.     GCC repeats, realleges, and incorporates by reference the allegations above as if set forth at length herein.

14.     On November 18, 2014, the parties entered into a valid and enforceable loan agreement, the terms of which they memorialized in the 2014 Note executed by TrueChoice's Chairman, Sev Kiel. *See* Exhibit A.

15.     GCC performed its obligations under the loan agreement by delivering payment of the agreed-upon loan principal of $50,000 to TrueChoice, as provided hereinabove.

16.     To date, TrueChoice has not paid GCC any portion of the loan principal or interest it owes pursuant to the terms of the 2014 Note. As a result of its non-payment, TrueChoice has breached, and remains in breach, of its contractual obligations to GCC.

17.     GCC is entitled to a judgment in its favor for all unpaid principal and interest accrued to date on the 2014 Note, post-judgment interest, and costs of suit.

## BREACH OF CONTRACT

### (2016 Note)

18.     GCC repeats, realleges, and incorporates by reference the allegations above as if set forth at length herein.

19.     On July 6, 2016, the parties entered into a valid and enforceable loan agreement, the terms of which they memorialized in the 2016 Note executed by TrueChoice's Chairman, Sev Kiel. *See* Exhibit B.

20.     GCC performed its obligations under the loan agreement by delivering payment of the agreed-upon loan principal of $50,000 to TrueChoice, as provided hereinabove.

21.     To date, TrueChoice has not paid GCC any portion of the loan principal or interest it owes pursuant to the terms of the Second Note. As a result of its non-payment, TrueChoice has breached, and remains in breach, of its contractual obligations to GCC.

22.     GCC is entitled to a judgment in its favor for all unpaid principal and interest accrued to date on the 2016 Note, post-judgment interest, and costs of suit.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## REQUEST FOR JURY TRIAL

Plaintiff hereby requests trial of this action by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for Judgment against Defendant awarding it the following relief:

i.      Compensatory and contractual damages in an amount to be proven at trial;

ii.     Reasonable attorneys' fees, costs, and disbursements Plaintiff has incurred and will incur in connection with this action; and

iii.    Such other and further relief as is just, proper, and equitable.

DATED: October 30, 2020                      SHUSTAK REYNOLDS & PARTNERS, P.C.

_____

Erwin J. Shustak, Esq. (Bar No. 1060508)
SHUSTAK REYNOLDS & PARTNERS, P.C.
477 Madison Avenue, 6th Floor
New York, NY 10022
t: (212) 688-5900
f: (212) 688-6151
shustak@shufirm.com

*Of Counsel:*
Joseph M. Mellano, Esq.
SHUSTAK REYNOLDS & PARTNERS, P.C.
401 West A Street, Suite 2200
San Diego, CA 92101
t: 619.696.9500
f: 619.615.5290
jmellano@shufirm.com

*Attorneys for Plaintiff Grenway Capital Corp.*

Exhibit "A"

THIS NOTE AND ANY SHARES OF COMMON STOCK ISSUABLE UPON ITS CONVERSION HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY STATE SECURITIES LAWS, AND MAY NOT BE SOLD OR OFFERED FOR SALE EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT AS TO THE SECURITIES UNDER SAID ACT AND ANY APPLICABLE STATE SECURITIES LAWS OR PURSUANT TO AN AVAILABLE EXEMPTION FROM SUCH REGISTRATION REQUIREMENTS.

**TRUECHOICE SOLUTIONS, INC.**
**CONVERTIBLE PROMISSORY NOTE**

US$50,000

New York, New York
November 18, 2014

**TRUECHOICE SOLUTIONS, INC.**, a Delaware corporation (the "Company"), the principal office of which is located at 150 East 52nd Street, 11th floor, New York, NY 10022, for value received hereby promises to pay to Grenway Capital Corporation or its registered assigns (the "Holder"), the sum of Fifty Thousand Dollars (US$50,000) on February 18, 2015 (such date being referred to as the "Maturity Date") and to pay any unpaid accrued interest hereon on the Maturity Date.  Payment of all amounts due hereunder shall be made in such coin or currency of the United States of America as at the time of payment shall be legal tender for the payment of public and private debts by mail to the last address of the Holder (as hereinafter defined) of this Note recorded on the books of the Company (which shall be the address set forth on the signature page of this Note until further notice from the Holder) or, if no such address is noted, at the principal office of the Company.

The following is a statement of the rights of the Holder of this Note and the conditions to which this Note is subject, and to which the Holder hereof, by the acceptance of this Note, agrees:

1.      *Definitions*.   As used in this Note, the following terms, unless the context otherwise requires, have the following meanings:

(i)      "Common Stock" shall mean (i) the class of stock designated as the common stock of the Company at the date hereof, or (ii) any other class of stock resulting from successive changes or reclassifications of such common stock consisting solely of change in par value, or from par value to no par value, or from no par value to par value.

(ii)      "Common Stock Equivalent" shall mean any security that is convertible into or exercisable for Common Stock (including non-voting Common Stock) at the election of the Company or the holder thereof or upon the occurrence of specified events.

(iii)      "Company" includes any corporation which shall succeed to or, with the Holder's prior written consent, assume the obligations of the Company under this Note.

(iv)     "Holder" when the context refers to a holder of this Note, shall mean any person who shall at the time be the registered holder of this Note.

2.     *Interest*. Interest shall accrue on the outstanding principal balance of this Note at the rate of eight percent (8%) per annum (the "Base Interest Rate").  Such interest shall be due on the Maturity Date.  In the event that the principal amount of this Note is not paid in full when such amount becomes due and payable, interest at the same rate as the Base Interest Rate plus two percent (2%) shall continue to accrue on the balance of any unpaid principal and interest until such balance is paid.  In no event shall the rate of interest hereunder exceed that maximum legal rate permitted by applicable law.  All interest accruing hereunder shall be computed on the basis of actual days elapsed over a year of 360 days.

3.     *Events of Default*.  If any of the following events (each, an "Event of Default") shall occur and be continuing:

(i)  Default shall be made by the Company in the payment of the principal of or interest accrued on this Note when and as the same shall become due and payable, whether at maturity or otherwise and such default shall have continued for a period of five days after written notice specifying such default to the Company by the Holder;

(ii)  Default shall be made in the performance or observance by the Company of any other covenant, agreement or condition contained in this Note and such default shall have continued for a period of 15 days after written notice specifying such default to the Company by the Holder or the Company shall have breached, in any material respect, any representation or warranty made in Section 13 hereof.

(iii)  The Company shall (a) admit in writing its inability to pay its debts generally as they become due, (b) file a petition or commence a voluntary case seeking relief under the Federal Bankruptcy Code, as now constituted or hereafter amended, or any other applicable Federal or state bankruptcy or insolvency law or other similar law, (c) consent to the entry of an order for relief under any law referred to in (b) above, or to the filing of any such petition or to the appointment or taking possession of a receiver, liquidator, assignee, trustee, custodian (or other similar official) of the Company or of all or substantially all of its property, (d) fail generally to pay its debts as such debts become due, or take corporate action in furtherance of any such action, or (e) make an assignment for the benefit of its creditors; or

(iv)  An involuntary case shall be commenced in respect of the Company under the Federal Bankruptcy Code, as now constituted or hereafter amended, or any other applicable Federal or state bankruptcy or insolvency law or other similar law, or a decree or order shall be entered by a court appointing a receiver, liquidator, assignee, trustee (or similar official) of the Company or of all or substantially all of its property, or ordering the winding-up or liquidation of its affairs and either (a) such involuntary case shall not be dismissed or such decree or order shall not be vacated or set aside or stayed within a period of 60 days from the date of commencement of such case or entry of such decree or order or (b) an order for relief shall be entered in such involuntary case under any law referred to above;

then, and in each and every such case, this Note, at the option of the Holder exercised by written notice to the Company in the case of an Event of Default specified in clause (i) or (ii) of this Section 3, and automatically in the case of an Event of Default specified in clause (iii) or (iv) of this Section 3, shall become immediately due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived, anything contained herein to the contrary notwithstanding, in which event, the Holder hereof shall be entitled to receive the principal hereof together with the interest accrued hereon; provided, however, that the Holder by written notice to the Company, may waive any Event of Default and/or rescind and annul any such acceleration, but no such waiver or rescission and annulment shall extend to or shall affect any subsequent default, or shall impair any right consequent thereon.

4.      *Redemption.*  This Note may not be redeemed or repaid without the Holder's prior written consent.

5.      *Conversion.* (i) The Holder of this Note has the right at any time prior to the Expiration Date (as defined below) to convert this Note and any interest hereon accrued and unpaid up to the date of conversion, in whole or in part, into fully paid and non-assessable shares of Common Stock.  The "Expiration Date" means the date and time at which the Holder shall have received from the Company repayment in full of all principal of this Note and payment in full of all interest and other amounts (if any) owing under this Note.

(ii)     The number of shares of Common Stock into which this Note may be converted (the "Conversion Shares") shall be determined by dividing the aggregate principal amount of this Note plus any accrued and unpaid interest hereon (or in the case of a partial conversion, such portion thereof as the Holder shall have specified in its Conversion Notice) by the Conversion Price (as defined below) in effect at the time of such conversion.  The "Conversion Price" means an amount equal to the lower of (a) $0.75 and (b) the per share consideration (as adjusted for any stock splits, reverse stock splits, stock dividends or recapitalizations) received or receivable by the Company in respect of an Investment Event.  An "Investment Event" means the Company receiving an amount in cash, cash equivalents, or other assets  (valued at their fair market value) in consideration for the issuance of one or more shares of Common Stock or Common Stock Equivalents.

In the case of securities convertible into, or exercisable for Common Stock or Common Stock Equivalents ("Convertible Securities") the Conversion Price shall be the lower of the Conversion Price in effect immediately prior to such issuance or the conversion or exercise price applicable to such Convertible Securities.  If the conversion rights associated with the Convertible Securities expire with none of such rights having been exercised, the adjustment set forth above shall be reversed with respect to the Note, to the extent not previously converted.

3

(iii)   Before the Holder shall be entitled to convert this Note into shares of Common Stock under Section 5(i) above, it shall surrender this Note, duly endorsed, at the office of the Company and shall give written notice in substantially the form of Exhibit A hereto (a "Conversion Notice") to the Company at its principal corporate office, of the election to convert the same pursuant to Section 5(i).  The Conversion Notice shall specify the principal amount of this Note and the accrued interest thereon to be converted and the name or names in which the Holder wishes the certificate or certificates for Common Stock to be issued.   Every such Conversion Notice shall be effective on the date given and shall constitute a contract between the Holder and the Company, whereby the Holder shall be deemed to subscribe for (and whereby the Company shall be deemed to agree to sell) the amount of Common Stock which it shall be entitled to receive upon such conversion, and, in satisfaction of such subscription, to deposit the Note to the extent of the principal amount thereof and interest thereon to be converted and to release the Company from all liability thereunder with respect to such converted principal and interest (except to deliver the shares deliverable upon conversion thereof and except that the Company shall remain liable for any breach of representation or warranty made by it herein), and thereby the Company shall be deemed to agree that the extinguishment of liability thereof (except as aforesaid) shall constitute full payment of such subscription for Common Stock to be delivered upon such conversion.  The Company will as soon as practicable after such deposit accompanied by the written notice and the statement above prescribed (and in any event within 20 business days) deliver at said office to the Holder or to its nominee or nominees, certificates for the number of full shares of Common Stock to which it shall be entitled as aforesaid, together with a cash adjustment of any fraction of a share as hereinafter provided, if not evenly convertible, and, if less then the entire principal amount of this Note is converted, a new Note for the principal amount and any accrued interest not so converted; provided that if the entire principal amount is converted, but all or some of the accrued interest is not converted, then such unconverted accrued interest shall become due and payable, on the earlier of the Maturity Date or two business days after such Conversion Notice is given.  Subject to the following provisions of this paragraph, such conversion shall be deemed to have been made as of the date of delivery to the Company of the Conversion Notice and at the Conversion Price in effect at the date of such delivery; and the person or persons entitled to receive the Common Stock deliverable upon conversion of this Note shall be treated for all purposes as the record holder or holders of such Common Stock on such date.  The Company shall not be required to convert this Note or any portion thereof while the stock transfer books of the Company are closed for any purpose; but delivery of a Conversion Notice during any period while such books are so closed shall become effective for conversion immediately prior to the closing of such books, as if the conversion had been made on the date of such delivery, and at the Conversion Price in effect at the date of such delivery.

(iv)   No fractional shares of Common Stock shall be issued upon conversion of this Note.   In lieu of the Company issuing any fractional shares to the Holder upon the conversion of this Note, the Company shall pay to the Holder the amount of outstanding principal that is not so converted, such payment to be in the form as provided below.

(v)   Any certificates evidencing shares of Common Stock issuable upon the conversion of this Note or any portion hereof shall bear the following legend:

4

THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY STATE SECURITIES LAWS, AND MAY NOT BE SOLD OR OFFERED FOR SALE EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT AS TO THE SECURITIES UNDER SAID ACT AND ANY APPLICABLE STATE SECURITIES LAWS OR PURSUANT TO AN AVAILABLE EXEMPTION FROM SUCH REGISTRATION REQUIREMENTS.

(vi)  By accepting this Note, the Holder agrees to the transfer restrictions in Section 9 hereof and agrees that it shall be a condition to the issuance of any shares of Common Stock upon the conversion of this Note or any portion thereof that (i) if the Company so requests, any parties other than the original Holder who are designated to receive such shares make to the Company such representations and warranties regarding such party's investment intent, qualifications and suitability relating to such investment as the Company may reasonably request, (ii) if the Holder or such other party is a party to that certain Shareholders Agreement, dated as of October 15, 2006, by and among the Company and its stockholders (the "Shareholders Agreement"), all shares acquired by it as a result of such conversion shall be subject to the Shareholders Agreement and if the Holder or such other party is not a party to the Shareholders Agreement, if the Company so requests, it shall agree to become a party thereto, with all shares acquired by it as a result of such conversion being subject thereto and (iii) in addition to the legend referred to in Section 5(v) above, the certificates evidencing any such shares shall bear any other legend required pursuant to the Shareholders Agreement.

6.    *Restrictive Covenant.*

(i)  Prior to the Expiration Date, the Company shall not do or permit to take place any voluntary or involuntary liquidation, dissolution or winding up of the Company or any capital reorganization, merger, consolidation or sale of all or substantially all of the assets of the Company; and the Company shall not enter into any agreement to do the foregoing.

(ii)  In case at any time the Company or any subsidiary of the Company proposed to take the action or consummate the event set forth in Section 6(i) hereof, then the Company shall give written notice of such proposal to the Holder and in no event shall such written notice be given later than five business days prior to the taking of such action.

7.  *Assignment.*  Subject to the restrictions on transfer described in Section 9 below, the rights and obligations of the Company and the Holder of this Note shall be binding upon and inure to the benefit of the successors, assigns, heirs, administrators and transferees of the parties.

8.  *Waiver and Amendment.*  Any provision of this Note may be amended, waived or modified upon the written consent of the Company and Holder.

9. *Transfer of this Note or Securities Issuable on Conversion Hereof.*  The Holder shall not make any offers or sales of, or otherwise transfer, this Note without the prior written consent of the Company.  The Holder shall not make any offers or sales of this Note or the securities into which this Note may be converted other than pursuant to a registration statement under the Securities Act or pursuant to an exemption from, or transaction not subject to, registration under the Securities Act.  This Note, if transferred, and each certificate representing the securities thus transferred shall bear a legend similar to the legend appearing on the face of this Note in order to ensure compliance with the Act, unless in the opinion of counsel for the Company such legend is not required in order to ensure compliance with the Act.

10. *Treatment of Note.*  To the extent permitted by generally accepted accounting principles, the Company will treat, account and report the Note as debt and not equity for accounting purposes and with respect to any returns filed with federal, state or local tax authorities.

11. *Notices.* All notices, demands, requests and other communications to be given or delivered under or by reason of the provisions of this Note shall be in writing and shall be deemed to have been given personally or when mailed by certified or registered mail, return receipt requested and postage prepaid, and addressed to the addresses of the respective parties set forth below or to such changed addresses as such parties may have fixed by notice; provided, however, that notice of change of address shall be effective only upon receipt:

|  |  |
|---|---|
| To the Company: | TRUECHOICE SOLUTIONS, INC.<br>150 East 52nd Street, 11th floor<br>New York, NY 10022<br>USA<br>Attn:  President |
| To the Holder: | At the record address of the Holder at such time as shown in the record books of the Company. |

12. *No Stockholder Rights.*  Nothing contained in this Note shall be construed as conferring upon the Holder or any other person the right to vote or to consent or to receive notice as a stockholder in respect of meetings of stockholders for the election of directors of the Company or any other matters or any rights whatsoever as a stockholder of the Company; and no dividends shall be payable or accrued in respect of this Note or the interest represented hereby or, prior to conversion hereof, the Conversion Shares obtainable as a result of such conversion and then only to the extent that, this Note shall have been so converted.

13. *Representations and Warranties of Company.* The Company represents and warrants to the Holder that:

(i)     The Conversion Shares initially issuable upon conversion of this Note have been duly authorized for issuance and when issued upon conversion of this Note will be validly issued, fully paid and non-assessable; and

(ii)     No preemptive or similar rights granted to any stockholders of the Company apply to the issuance of this Note and/or the Common Stock issuable upon conversion hereof.

14.  *Governing Law.*  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to principles of conflict of laws.

15.  *Heading; References.*  All headings used herein are used for convenience only and shall not be used to construe or interpret this Note.  Except where otherwise indicated, all references herein to Sections refer to Sections hereof.

IN WITNESS WHEREOF, the Company has caused this Note to be issued this 18th day of November 2014.

TRUECHOICE SOLUTIONS, INC.

By:_____

Name: Sev K-H Keil

Title: Chairman

Name of Holder:        Grenway Capital Corporation

Address:        P.O. Box 22785, Cleveland, OH 44122

8

## EXHIBIT A

## NOTICE OF CONVERSION

(To Be Signed Only Upon Conversion of Note)

TRUECHOICE SOLUTIONS, INC.

The undersigned, the holder of the foregoing Note, hereby surrenders such Note for conversion into shares of the Common Stock of TRUECHOICE SOLUTIONS, INC., to the extent of $ unpaid principal amount of such Note and to the extent of $ unpaid accrued interest on such Note, and requests that the certificates for such shares be issued at a conversion price of $.75 per share in the name of, and delivered to, _____ whose address is _____ _____.

Dated: _____

_____
(Signature must conform in all respects to name of holder as specified on the face of the Note)

_____
(Address)

## EXHIBIT B

WIRE INSTRUCTIONS

JPMorgan Chase Bank, N.A.
941 Lexington Avenue
New York, NY 10021
ABA: ██████
SWIFT: ██████
Payee: TRUECHOICE SOLUTIONS, INC.
Account Number: ██████

Exhibit "B"

THIS NOTE AND ANY SHARES OF COMMON STOCK ISSUABLE UPON ITS CONVERSION HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY STATE SECURITIES LAWS, AND MAY NOT BE SOLD OR OFFERED FOR SALE EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT AS TO THE SECURITIES UNDER SAID ACT AND ANY APPLICABLE STATE SECURITIES LAWS OR PURSUANT TO AN AVAILABLE EXEMPTION FROM SUCH REGISTRATION REQUIREMENTS.

### TRUECHOICE SOLUTIONS, INC.
### CONVERTIBLE PROMISSORY NOTE

US$50,000                                      New York, New York
                                                       July 6, 2016

      **TRUECHOICE SOLUTIONS, INC.**, a Delaware corporation (the "Company"), the principal office of which is located at 150 East 52nd Street, 11th floor, New York, NY 10022, for value received hereby promises to pay to Grenway Capital Corporation or its registered assigns (the "Holder"), the sum of Fifty Thousand Dollars (US$50,000) on October 5, 2016 (such date being referred to as the "Maturity Date") and to pay any unpaid accrued interest hereon on the Maturity Date.  Payment of all amounts due hereunder shall be made in such coin or currency of the United States of America as at the time of payment shall be legal tender for the payment of public and private debts by mail to the last address of the Holder (as hereinafter defined) of this Note recorded on the books of the Company (which shall be the address set forth on the signature page of this Note until further notice from the Holder) or, if no such address is noted, at the principal office of the Company.

      The following is a statement of the rights of the Holder of this Note and the conditions to which this Note is subject, and to which the Holder hereof, by the acceptance of this Note, agrees:

      1.    *Definitions*.  As used in this Note, the following terms, unless the context otherwise requires, have the following meanings:

          (i)    "Common Stock" shall mean (i) the class of stock designated as the common stock of the Company at the date hereof, or (ii) any other class of stock resulting from successive changes or reclassifications of such common stock consisting solely of change in par value, or from par value to no par value, or from no par value to par value.

          (ii)    "Common Stock Equivalent" shall mean any security that is convertible into or exercisable for Common Stock (including non-voting Common Stock) at the election of the Company or the holder thereof or upon the occurrence of specified events.

          (iii)    "Company" includes any corporation which shall succeed to or, with the Holder's prior written consent, assume the obligations of the Company under this Note.

(iv)    "Holder" when the context refers to a holder of this Note, shall mean any person who shall at the time be the registered holder of this Note.

2.    *Interest*. Interest shall accrue on the outstanding principal balance of this Note at the rate of twelve percent (12%) per annum (the "Base Interest Rate").  Such interest shall be due on the Maturity Date.  In the event that the principal amount of this Note is not paid in full when such amount becomes due and payable, interest at the same rate as the Base Interest Rate plus six percent (6%) shall continue to accrue on the balance of any unpaid principal and interest until such balance is paid.  In no event shall the rate of interest hereunder exceed that maximum legal rate permitted by applicable law.  All interest accruing hereunder shall be computed on the basis of actual days elapsed over a year of 360 days.

3.    *Events of Default*.  If any of the following events (each, an "Event of Default") shall occur and be continuing:

(i)  Default shall be made by the Company in the payment of the principal of or interest accrued on this Note when and as the same shall become due and payable, whether at maturity or otherwise and such default shall have continued for a period of five days after written notice specifying such default to the Company by the Holder;

(ii)  Default shall be made in the performance or observance by the Company of any other covenant, agreement or condition contained in this Note and such default shall have continued for a period of 15 days after written notice specifying such default to the Company by the Holder or the Company shall have breached, in any material respect, any representation or warranty made in Section 13 hereof.

(iii)  The Company shall (a) admit in writing its inability to pay its debts generally as they become due, (b) file a petition or commence a voluntary case seeking relief under the Federal Bankruptcy Code, as now constituted or hereafter amended, or any other applicable Federal or state bankruptcy or insolvency law or other similar law, (c) consent to the entry of an order for relief under any law referred to in (b) above, or to the filing of any such petition or to the appointment or taking possession of a receiver, liquidator, assignee, trustee, custodian (or other similar official) of the Company or of all or substantially all of its property, (d) fail generally to pay its debts as such debts become due, or take corporate action in furtherance of any such action, or (e) make an assignment for the benefit of its creditors; or

(iv)  An involuntary case shall be commenced in respect of the Company under the Federal Bankruptcy Code, as now constituted or hereafter amended, or any other applicable Federal or state bankruptcy or insolvency law or other similar law, or a decree or order shall be entered by a court appointing a receiver, liquidator, assignee, trustee (or similar official) of the Company or of all or substantially all of its property, or ordering the winding-up or liquidation of its affairs and either (a) such involuntary case shall not be dismissed or such decree or order shall not be vacated or set aside or stayed within a period of 60 days from the date of commencement of such case or entry of such decree or order or (b) an order for relief shall be entered in such involuntary case under any law referred to above;

then, and in each and every such case, this Note, at the option of the Holder exercised by written notice to the Company in the case of an Event of Default specified in clause (i) or (ii) of this Section 3, and automatically in the case of an Event of Default specified in clause (iii) or (iv) of this Section 3, shall become immediately due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived, anything contained herein to the contrary notwithstanding, in which event, the Holder hereof shall be entitled to receive the principal hereof together with the interest accrued hereon; provided, however, that the Holder by written notice to the Company, may waive any Event of Default and/or rescind and annul any such acceleration, but no such waiver or rescission and annulment shall extend to or shall affect any subsequent default, or shall impair any right consequent thereon.

4.      *Redemption.*  This Note may not be redeemed or repaid without the Holder's prior written consent.

5.      *Conversion.* (i) The Holder of this Note has the right at any time prior to the Expiration Date (as defined below) to convert this Note and any interest hereon accrued and unpaid up to the date of conversion, in whole or in part, into fully paid and non-assessable shares of Common Stock.  The "Expiration Date" means the date and time at which the Holder shall have received from the Company repayment in full of all principal of this Note and payment in full of all interest and other amounts (if any) owing under this Note.

(ii)    The number of shares of Common Stock into which this Note may be converted (the "Conversion Shares") shall be determined by dividing the aggregate principal amount of this Note plus any accrued and unpaid interest hereon (or in the case of a partial conversion, such portion thereof as the Holder shall have specified in its Conversion Notice) by the Conversion Price (as defined below) in effect at the time of such conversion.  The "Conversion Price" means an amount equal to the lower of (a) $0.75 and (b) the per share consideration (as adjusted for any stock splits, reverse stock splits, stock dividends or recapitalizations) received or receivable by the Company in respect of an Investment Event.  An "Investment Event" means the Company receiving an amount in cash, cash equivalents, or other assets  (valued at their fair market value) in consideration for the issuance of one or more shares of Common Stock or Common Stock Equivalents.

In the case of securities convertible into, or exercisable for Common Stock or Common Stock Equivalents ("Convertible Securities") the Conversion Price shall be the lower of the Conversion Price in effect immediately prior to such issuance or the conversion or exercise price applicable to such Convertible Securities.  If the conversion rights associated with the Convertible Securities expire with none of such rights having been exercised, the adjustment set forth above shall be reversed with respect to the Note, to the extent not previously converted.

(iii)   Before the Holder shall be entitled to convert this Note into shares of Common Stock under Section 5(i) above, it shall surrender this Note, duly endorsed, at the office of the Company and shall give written notice in substantially the form of Exhibit A hereto (a "Conversion Notice") to the Company at its principal corporate office, of the election to convert the same pursuant to Section 5(i).  The Conversion Notice shall specify the principal amount of this Note and the accrued interest thereon to be converted and the name or names in which the Holder wishes the certificate or certificates for Common Stock to be issued.  Every such Conversion Notice shall be effective on the date given and shall constitute a contract between the Holder and the Company, whereby the Holder shall be deemed to subscribe for (and whereby the Company shall be deemed to agree to sell) the amount of Common Stock which it shall be entitled to receive upon such conversion, and, in satisfaction of such subscription, to deposit the Note to the extent of the principal amount thereof and interest thereon to be converted and to release the Company from all liability thereunder with respect to such converted principal and interest (except to deliver the shares deliverable upon conversion thereof and except that the Company shall remain liable for any breach of representation or warranty made by it herein), and thereby the Company shall be deemed to agree that the extinguishment of liability thereof (except as aforesaid) shall constitute full payment of such subscription for Common Stock to be delivered upon such conversion.  The Company will as soon as practicable after such deposit accompanied by the written notice and the statement above prescribed (and in any event within 20 business days) deliver at said office to the Holder or to its nominee or nominees, certificates for the number of full shares of Common Stock to which it shall be entitled as aforesaid, together with a cash adjustment of any fraction of a share as hereinafter provided, if not evenly convertible, and, if less then the entire principal amount of this Note is converted, a new Note for the principal amount and any accrued interest not so converted; provided that if the entire principal amount is converted, but all or some of the accrued interest is not converted, then such unconverted accrued interest shall become due and payable, on the earlier of the Maturity Date or two business days after such Conversion Notice is given.  Subject to the following provisions of this paragraph, such conversion shall be deemed to have been made as of the date of delivery to the Company of the Conversion Notice and at the Conversion Price in effect at the date of such delivery; and the person or persons entitled to receive the Common Stock deliverable upon conversion of this Note shall be treated for all purposes as the record holder or holders of such Common Stock on such date.  The Company shall not be required to convert this Note or any portion thereof while the stock transfer books of the Company are closed for any purpose; but delivery of a Conversion Notice during any period while such books are so closed shall become effective for conversion immediately prior to the closing of such books, as if the conversion had been made on the date of such delivery, and at the Conversion Price in effect at the date of such delivery.

(iv)  No fractional shares of Common Stock shall be issued upon conversion of this Note.  In lieu of the Company issuing any fractional shares to the Holder upon the conversion of this Note, the Company shall pay to the Holder the amount of outstanding principal that is not so converted, such payment to be in the form as provided below.

(v) Any certificates evidencing shares of Common Stock issuable upon the conversion of this Note or any portion hereof shall bear the following legend:

THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY STATE SECURITIES LAWS, AND MAY NOT BE SOLD OR OFFERED FOR SALE EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT AS TO THE SECURITIES UNDER SAID ACT AND ANY APPLICABLE STATE SECURITIES LAWS OR PURSUANT TO AN AVAILABLE EXEMPTION FROM SUCH REGISTRATION REQUIREMENTS.

(vi)   By accepting this Note, the Holder agrees to the transfer restrictions in Section 9 hereof and agrees that it shall be a condition to the issuance of any shares of Common Stock upon the conversion of this Note or any portion thereof that (i) if the Company so requests, any parties other than the original Holder who are designated to receive such shares make to the Company such representations and warranties regarding such party's investment intent, qualifications and suitability relating to such investment as the Company may reasonably request, (ii) if the Holder or such other party is a party to that certain Shareholders Agreement, dated as of October 15, 2006, by and among the Company and its stockholders (the "Shareholders Agreement"), all shares acquired by it as a result of such conversion shall be subject to the Shareholders Agreement and if the Holder or such other party is not a party to the Shareholders Agreement, if the Company so requests, it shall agree to become a party thereto, with all shares acquired by it as a result of such conversion being subject thereto and (iii) in addition to the legend referred to in Section 5(v) above, the certificates evidencing any such shares shall bear any other legend required pursuant to the Shareholders Agreement.

6.     *Restrictive Covenant.*

(i)   Prior to the Expiration Date, the Company shall not do or permit to take place any voluntary or involuntary liquidation, dissolution or winding up of the Company or any capital reorganization, merger, consolidation or sale of all or substantially all of the assets of the Company; and the Company shall not enter into any agreement to do the foregoing.

(ii)   In case at any time the Company or any subsidiary of the Company proposed to take the action or consummate the event set forth in Section 6(i) hereof, then the Company shall give written notice of such proposal to the Holder and in no event shall such written notice be given later than five business days prior to the taking of such action.

7.   *Assignment.*   Subject to the restrictions on transfer described in Section 9 below, the rights and obligations of the Company and the Holder of this Note shall be binding upon and inure to the benefit of the successors, assigns, heirs, administrators and transferees of the parties.

8.   *Waiver and Amendment.*   Any provision of this Note may be amended, waived or modified upon the written consent of the Company and Holder.

9.  *Transfer of this Note or Securities Issuable on Conversion Hereof.*  The Holder shall not make any offers or sales of, or otherwise transfer, this Note without the prior written consent of the Company.  The Holder shall not make any offers or sales of this Note or the securities into which this Note may be converted other than pursuant to a registration statement under the Securities Act or pursuant to an exemption from, or transaction not subject to, registration under the Securities Act.  This Note, if transferred, and each certificate representing the securities thus transferred shall bear a legend similar to the legend appearing on the face of this Note in order to ensure compliance with the Act, unless in the opinion of counsel for the Company such legend is not required in order to ensure compliance with the Act.

10.  *Treatment of Note.*  To the extent permitted by generally accepted accounting principles, the Company will treat, account and report the Note as debt and not equity for accounting purposes and with respect to any returns filed with federal, state or local tax authorities.

11.  *Notices.* All notices, demands, requests and other communications to be given or delivered under or by reason of the provisions of this Note shall be in writing and shall be deemed to have been given personally or when mailed by certified or registered mail, return receipt requested and postage prepaid, and addressed to the addresses of the respective parties set forth below or to such changed addresses as such parties may have fixed by notice; provided, however, that notice of change of address shall be effective only upon receipt:

|  |  |
|---|---|
| To the Company: | TRUECHOICE SOLUTIONS, INC.<br>150 East 52nd Street, 11th floor<br>New York, NY 10022<br>USA<br>Attn:  President |
| To the Holder: | At the record address of the Holder at such time as shown in the record books of the Company. |

12.  *No Stockholder Rights.*  Nothing contained in this Note shall be construed as conferring upon the Holder or any other person the right to vote or to consent or to receive notice as a stockholder in respect of meetings of stockholders for the election of directors of the Company or any other matters or any rights whatsoever as a stockholder of the Company; and no dividends shall be payable or accrued in respect of this Note or the interest represented hereby or, prior to conversion hereof, the Conversion Shares obtainable as a result of such conversion and then only to the extent that, this Note shall have been so converted.

13.  *Representations and Warranties of Company.* The Company represents and warrants to the Holder that:

(i)  The Conversion Shares initially issuable upon conversion of this Note have been duly authorized for issuance and when issued upon conversion of this Note will be validly issued, fully paid and non-assessable; and

(ii)     No preemptive or similar rights granted to any stockholders of the Company apply to the issuance of this Note and/or the Common Stock issuable upon conversion hereof.

14.   *Governing Law.*  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to principles of conflict of laws.

15.   *Heading; References.*  All headings used herein are used for convenience only and shall not be used to construe or interpret this Note.  Except where otherwise indicated, all references herein to Sections refer to Sections hereof.

IN WITNESS WHEREOF, the Company has caused this Note to be issued this 6th day of July 2016.

TRUECHOICE SOLUTIONS, INC.

By:_____
Name: Sev K-H Keil
Title:  Chairman

Name of Holder:        Grenway Capital Corporation

Address:               P.O. Box 22785, Cleveland, OH 44122

EXHIBIT A

NOTICE OF CONVERSION

(To Be Signed Only Upon Conversion of Note)

TRUECHOICE SOLUTIONS, INC.

The undersigned, the holder of the foregoing Note, hereby surrenders such Note for conversion into shares of the Common Stock of TRUECHOICE SOLUTIONS, INC., to the extent of $ unpaid principal amount of such Note and to the extent of $ unpaid accrued interest on such Note, and requests that the certificates for such shares be issued at a conversion price of $.75 per share in the name of, and delivered to, _____ whose address is _____ _____.

Dated: _____

_____
(Signature must conform in all respects to name of holder as specified on the face of the Note)

_____
(Address)

EXHIBIT B

9

WIRE INSTRUCTIONS

JPMorgan Chase Bank, N.A.
941 Lexington Avenue
New York, NY 10021
ABA: █████████
SWIFT: █████████
Payee: TRUECHOICE SOLUTIONS, INC.
Account Number: █████████